# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | | |
|---|---|---|
| ROXANNE THOMAS, | ) | No.  CV 07-8040-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

## PROCEEDINGS

Plaintiff filed this action on December 18, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on February 1, 2008, and January 8, 2009.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 24, 2008, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 22, 1963.  [Administrative Record ("AR") at 55-56, 59.]  She has an eleventh grade education [AR at 66, 292], and has no past relevant work experience.  [AR at 63-64, 68-75.]

On February 28, 2005,[1] plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been disabled since February 28, 2005,[2] due to a gunshot wound to the head, right hand problems, mental problems, blurred vision, and headaches.  [AR at 54-58, 59-61, 62-67.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 35-49, 52-52A.]  A hearing was held on October 18, 2006, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 288-304.]  A vocational expert also testified.  [AR at 301-03.]  On October 26, 2006, the ALJ determined that plaintiff was not disabled.  [AR at 12-21.]  Plaintiff requested review of the hearing decision.  [AR at 11.]  When the Appeals Council denied plaintiff's request for review on August 14, 2007, the ALJ's decision became the final decision of the Commissioner.  [AR at 3-5.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

---

[1]   Although the "Leads/Protective Filing Worksheet" noted that the lead was established on February 1, 2005, and the ALJ in the decision noted a protective filing date of February 1, 2005, at the hearing on October 18, 2006, plaintiff's counsel indicated that the protective filing date was February 28, 2005.  [AR at 15, 55, 291.]  Further, a filing date of February 28, 2005, was noted on other documents in the record.  [AR at 35-37, 59.]

[2]   At the hearing on October 18, 2006, plaintiff's counsel amended the alleged onset date of the disability from December 3, 2001, to February 28, 2005, the protective filing date of plaintiff's application.  [AR at 291.]

1 | evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,

2 | 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

3 |         In this context, the term "substantial evidence" means "more than a mere scintilla but less

4 | than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

5 | adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

6 | 1257.  When determining whether substantial evidence exists to support the Commissioner's

7 | decision, the Court examines the administrative record as a whole, considering adverse as well

8 | as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

9 | Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

10 | must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

11 | 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

12 |

13 |                                             IV.

14 |                          **THE EVALUATION OF DISABILITY**

15 |         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

16 | to engage in any substantial gainful activity owing to a physical or mental impairment that is

17 | expected to result in death or which has lasted or is expected to last for a continuous period of at

18 | least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

19 |

20 | **A.    THE FIVE-STEP EVALUATION PROCESS**

21 |         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

22 | whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

23 | 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

24 | determine whether the claimant is currently engaged in substantial gainful activity; if so, the

25 | claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

26 | substantial gainful activity, the second step requires the Commissioner to determine whether the

27 | claimant has a "severe" impairment or combination of impairments significantly limiting her ability

28 | to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had never engaged in any substantial gainful activity. [AR at 16.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: psychotic disorder, not otherwise specified, cocaine and alcohol dependence in reported early remission, and amputation of the tip of the right thumb. [AR at 16.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 16-17.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to "perform work across all levels of exertion; perform no more than simple, repetitive tasks requiring no interaction with the general public (incidental contact is okay); and she is limited to only occasional fine gripping activities which require use of the right thumb -- e.g., only

---

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

occasional writing." [AR at 17 (citation omitted).]  At step four, the ALJ concluded that plaintiff had no past relevant work.  [AR at 19.]  At step five, the ALJ found, based on the vocational expert's testimony and application of the Medical-Vocational Guidelines as a framework, that "there are jobs that exist in significant numbers in the national economy" that plaintiff is capable of performing.  [AR at 19-20.]  Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 20-21.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider the medical evidence as contained in the treatment record from the Parole Outpatient Clinic.  Joint Stipulation ("Joint Stip.") at 4.  Specifically, plaintiff asserts that the ALJ did not articulate a legally sufficient rationale to reject the opinion of a licensed clinical social worker that was contained in the Parole Outpatient Clinic records.[4]  Joint Stip. at 5-8.  As discussed below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

On October 17, 2006, B. Armour, a licensed clinical social worker at the Parole Outpatient Clinic, performed an evaluation of plaintiff.  [AR at 272-73.] Mr. Armour conducted a mental status examination and noted that plaintiff (1) showed no signs of thought disturbance; (2) denied current suicidal and homicidal ideations, but had a history of attempts and ideations; (3) had "goal directed, linear, and logical" thought processes; (4) demonstrated an affect and mood that were congruent for setting; (5) had symptoms of depression related to the death of her daughter; (6)

---

[4]   To the extent that plaintiff is also contending that the ALJ did not articulate legally sufficient reasons to reject the opinion of psychiatrist Dr. James Hilton from the Parole Outpatient Clinic, such a contention is not at all supported by plaintiff's argument in the Joint Stipulation.  In the decision, the ALJ provided several reasons for rejecting Dr. Hilton's opinion that plaintiff was medically disabled for purposes of transit services.  [AR at 17, 163-64.]  Although plaintiff in the Joint Stipulation cited the "LACTOA Disability ID Card Application" completed by Dr. Hilton, in which he found that plaintiff suffered from a medical disability, plaintiff failed to offer any argument as to the sufficiency of the ALJ's reasons for rejection of Dr. Hilton's opinion.  As such, the Court's analysis herein does not address the rejection of Dr. Hilton's opinion.

displayed an anxious mood with some fidgeting; and (7) had been clean and sober for the duration of her current parole.  [AR at 272-73.]  He diagnosed plaintiff with bipolar disorder, most recent episode depressed; rule out amphetamine induced mood disorder; mood disorder, not otherwise specified; and assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 50.[5] [AR at 273.]  In the decision, the ALJ rejected the October 17, 2006, GAF score of 50 assigned to plaintiff by Mr. Armour because he was a licensed clinical social worker, not an "acceptable medical source," and his assessment of plaintiff did not support such a low GAF score.[6]  [AR at 17.]

The ALJ's rejection of the GAF score of 50 assessed by Mr. Armour does not warrant remand.  First, the ALJ in the decision considered the evaluation prepared by Mr. Armour and determined that he was "a licensed clinical social worker who is not an acceptable medical source whose opinion is entitled to deference."  [AR at 17.]  "The term 'medical sources' refers to both 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources.'"  Social Security Ruling[7] 06-03p (citing 20 C.F.R. §§ 404.1502, 416.902).  Only "acceptable medical sources" can be considered treating sources whose medical opinions may

---

[5]    A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 34.

[6]    Defendant's contention that the ALJ also rejected the GAF score of 50 because it was not supported by plaintiff's "spotty" mental health treatment record (Joint Stip. at 16) is inaccurate. The ALJ in the decision noted that she did not accept plaintiff's previous attorney's proposed residual functional capacity indicating marked limitations dealing with coworkers and supervisors, as it was not supported by plaintiff's "spotty" mental health treatment record.  [AR at 303.]  This was not a reason that the ALJ offered to reject the GAF score of 50.

[7]    Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   be entitled to controlling weight under 20 C.F.R. §§ 404.1502 and 416.902.  Mr. Armour is not

2   considered an "acceptable medical source" under the regulations.  See 20 C.F.R. §§ 404.1513,

3   416.913 (listing "acceptable medical sources").  Indeed, Mr. Armour is plainly precluded from being

4   considered a "treating source" by the language of the relevant regulations, which do not list a

5   licensed clinical social worker as an "acceptable medical source."  Rather, the reports of licensed

6   clinical social workers are considered "other sources" of evidence, not evidence from an

7   "acceptable medical source."  See 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); see also SSR

8   06-03p ("other sources" include medical sources who are not "acceptable medical sources," such

9   as nurse-practitioners, physician assistants, **licensed clinical social workers**, naturopaths,

10   chiropractors, audiologists, and therapists).  Thus, the ALJ did not err in finding that Mr. Armour

11   was not an "acceptable medical source."

12        Even if Mr. Armour's opinion were elevated to the opinion of an "acceptable medical source"

13   and accorded treating physician status based on Dr. Hilton's incorporation of Mr. Armour's opinion

14   into his own opinion as part of the "treatment team" approach,[8] the ALJ's rejection of the GAF

15   score of 50 -- as not supported by the October 17, 2006, evaluation performed by Mr. Armour --

16   was legally sufficient.  An ALJ may only reject the opinion of the treating physician if the ALJ

17   provides specific and legitimate reasons for doing so that are based on substantial evidence in

18   the record.  See Lester, 81 F.3d at 830; see also Social SSR 96-2p ("the notice of the

19   determination or decision must contain specific reasons for the weight given to the treating

20   source's medical opinion, supported by the evidence in the case record, and must be sufficiently

21   specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

22

23

24      [8]    The court in Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1037 (9th Cir. 2003),
found that the use of a "treatment team" approach by health care providers was significant in

25   determining the weight to be given to the opinion of a supervising physician who did not see
plaintiff with any regularity, but who transmitted both his own knowledge and opinion of plaintiff,

26   as well as the opinions of the medical treatment team providing "hands-on" treatment under his
supervision.  See Benton, 331 F.3d at 1036, 1039 (noting that the use of a "team" approach by

27   medical providers is analytically significant); see also Shontos v. Barnhart, 328 F.3d 418, 426 (8th
Cir. 2003) (concluding that substantial evidence indicates that the medical sources provided a

28   "team" approach to mental health care).

1   source's medical opinion and the reasons for that weight."). Specific and legitimate reasons can

2   be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence,

3   stating [the ALJ's] interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715,

4   725 (9th Cir. 1998) (citing Magallanes v. Bowen, 881 F.2d 747, 725 (9th Cir. 1989)). The ALJ in

5   the decision acknowledged plaintiff's GAF score of 50, and permissibly concluded that it was not

6   supported by the evaluation performed by Mr. Armour. In doing so, the ALJ considered the nature

7   and extent of the treatment relationship, the lack of an explanation provided for the opinion, and

8   the relevant evidence presented to support the opinion. See 20 C.F.R. §§ 404.1527(d)(2)(ii),

9   (d)(3), 416.927(d)(2)(ii), (d)(3). A review of the record demonstrates that Mr. Armour assessed

10  plaintiff with a GAF score of 50 on only one occasion, while contemporaneously performing a

11  mental status examination reflecting just minimal mental abnormalities. [AR at 272-73.] Mr.

12  Armour did not offer a sufficient explanation or any relevant evidence to support such a GAF

13  assessment. Although the results of the mental status examination showed that plaintiff's mood

14  was anxious with some fidgeting, plaintiff showed no signs of thought disturbance, denied current

15  suicidal and homicidal ideations, had "goal directed, linear, and logical" thought processes, and

16  had an affect and mood that were congruent for setting. [AR at 272-73.] These findings do not

17  indicate the serious symptoms or serious impairments in social, occupational, or school functioning

18  that are associated with a GAF score of 50. See DSM-IV at 34. Indeed, the mental status

19  examination findings as a whole support the ALJ's conclusion that plaintiff is able to "perform work

20  across all levels of exertion," while limited to the performance of "no more than simple, repetitive

21  tasks requiring no interaction with the general public." [AR at 17.] Given that the GAF score of

22  50 was unsupported by the evaluation, the ALJ did not err in her consideration of Mr. Armour's

23  opinion.

24      Plaintiff further contends that "[e]ven if the opinion of the licensed social worker is not

25  afforded treating status[,] the ALJ's consideration of the opinion is deficient under the controlling

26  regulations." Joint Stip. at 8-9. Plaintiff's contention lacks merit. As discussed above, the ALJ

27  considered the GAF score of 50 assigned to plaintiff by Mr. Armour and determined that it was not

28  supported by Mr. Armour's assessment of plaintiff. [AR at 17.] While the regulations indicate that

relevant evidence in the record will be considered in determining whether an individual is disabled, the regulations do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 C.F.R. §§ 404.1513(d) and 416.913(d).  See 20 C.F.R. §§ 404.1527, 416.927; see also SSR 06-03p.  However, according to SSR 06-03p, an ALJ may use evidence from "other sources," including licensed clinical social workers, to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.  See SSR 06-03p (the opinions of medical sources who are not "acceptable medical sources," including nurse practitioners, physician assistants, and licensed clinical social workers, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file," in light of "the growth of managed health care in recent years and the emphasis on containing medical costs").  In order to evaluate opinion evidence from "other sources," an ALJ can apply the following factors: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion.  See SSR 06-03p.  Here, in finding that the opinion of Mr. Armour set forth in the October 17, 2006, evaluation did not support the GAF score of 50, the ALJ considered the degree to which Mr. Armour presented relevant evidence to support his opinion (she concluded that it was not supported, which is reflected by the relatively normal findings in the evaluation and the record as a whole [AR at 17, 272-73]), the comprehensiveness of Mr. Armour's explanation for the GAF score of 50 (she determined that the evaluation lacked any explanation for the GAF score of 50 [AR at 17, 272-73]), and the number of evaluations completed by Mr. Armour (she discussed the only evaluation included in the record that was completed by Mr. Armour [AR at 17, 272-73]).  Given Mr. Armour's failure to present objective findings to support the GAF score of 50, or to offer an explanation for that score, as well as the fact that he completed only a single

/

/

1 │ evaluation of plaintiff, the ALJ's consideration of the October 17, 2006, evaluation complied with

2 │ SSR 06-03p.[9]

3 │       Finally, the ALJ's consideration of the GAF score of 50 does not warrant remand given that

4 │ GAF scores are not determinative of disability for Social Security purposes.  In fact, the Social

5 │ Security Administration has declined to endorse the GAF scale for "use in the Social Security and

6 │ SSI disability programs," and has indicated that GAF scores have no "direct correlation to the

7 │ severity requirements in [the] mental disorders listings."  <u>See</u> Revised Medical Criteria for

8 │ Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21,

9 │ 2000).  Although "the GAF is a test used by mental health practitioners with respect to planning

10 │ treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound

11 │ to consider its results at the exclusion of other medically reliable evidence."  <u>Alvarez v. Barnhart</u>,

12 │ 2002 WL 31466411, at *8 (W.D. Tex. Oct. 2, 2002).  Nor is a GAF score determinative of an

13 │ individual's RFC assessment.  <u>Id.</u>  ("A GAF score is not a rating typically relied upon with respect

14 │ to assessing an individual's RFC under the Act.");  <u>see</u> <u>also</u> <u>Howard v. Commissioner of Social</u>

15 │ <u>Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score is not essential in assessing RFC).  Thus,

16 │ while an ALJ is not required to rely on GAF scores in formulating a decision, the ALJ here

17 │ nevertheless conducted a thorough review of the medical evidence presented, including the GAF

18 │ score of 50 assigned to plaintiff, and evaluated the subjective evidence, such as plaintiff's hearing

19 │ testimony as to her symptoms and daily activities. [AR at 17-19.]  Remand is not warranted based

20 │ on the ALJ's consideration of the medical evidence from the Parole Outpatient Clinic.

21 │ /

22 │ /

23 │ /

24 │

25 │     [9]   The Court notes that plaintiff was assessed with a GAF score of 45 on January 31, 2005.
[AR at 138.]  The ALJ found that the low GAF score of 45 was "due in part to substance abuse

26 │ without other objective support," and thus she did not accept it as representative of plaintiff's
mental functioning. [AR at 17.]  The ALJ concluded that "[p]rior prison treatment notes in fact gave

27 │ [plaintiff] a higher GAF score of 65, which generally indicates only mild mental functional
limitations." [AR at 17, 113, 115, 119.]  The ALJ sufficiently considered the various GAF scores

28 │ in the record.

# VI.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 21, 2009

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE